Case number 20-1480, Julianne Eden Busic, Petitioner v. Transportation Security Administration. Ms. Goody for the Petitioner, Mr. Holtman for the Respondent. Ms. Goody, please proceed whenever you're ready. Thank you. Good morning, Your Honors. My name is Shelise Gaddy on behalf of Petitioner Ms. Busic. Petitioner is a 74-year-old Jewish citizen. She was denied a reasonable way to travel home because the TSA says she may pose a current threat to civil aviation. But the only evidence in the record that suggests she is a threat is a nearly 50-year-old conviction for which she was paroled in 1989 after affirming by the parole board that her release would not jeopardize public welfare. And the government's misrepresentation of a 2004 newspaper interview that was never disclosed to her in the administrative proceedings. It's not just any old conviction, right? It's a conviction of air piracy. And the underlying conduct includes placing a bomb in Grand Central, which murdered a police officer. Petitioner was convicted of hijacking an aircraft. But the order that says the TSA's assessment is that Petitioner poses a current threat. It provides no reasons and makes no rational assessment as to why Petitioner might pose a threat today. And we submit they can't solely rely on the fact of a prior conviction alone. It must assess the facts before it, including substantive evidence that she presented showing she does not pose a threat today. This circuit has repeatedly said that we review decisions of the TSA about aviation safety with substantial deference. I'm wondering, do you agree that that is the standard here? Our circuit standard. And and even if assuming that it is, how how does the arbitrary and capricious standard. You know, succeed under that deferential standard. Sure. TSA allows all the humanitarian law projects say that difference applies to the evaluation of facts. And our argument is that there's been no evaluation of facts. So if the deference standard does apply, a mere resuscitation of the facts provided by Petitioner would be insufficient. This court's held that a fair evaluation requires an agency to show it considered significant evidence on both sides of the question and explained its conclusions in light of those significant objections. So in honor of various, while the court notes that it does apply a highly deferential standard to review TSA's judgment, the TSA's judgment include a comprehensive review of the threat Petitioner posed, including background investigations, internal agency communications and explanation of the grounds for its decisions. And the court found that it offered a clear and reasonable statement of the grounds on which it relied. And we would submit that there's been no such informed judgment here that the court can defer to. So so there are misusage claims, violations of the due process clause. And I'm I'd like to understand more about what precisely the liberty interest is here. So the Supreme Court has recognized a right to interstate travel, which is largely unqualified. But but are you claiming some additional liberty interest here, liberty interest to international travel to a liberty interest in commercial flight? You know, what precisely is the liberty interest that's being claimed here? I would suggest that we are claiming that she has an interest in international travel purely because she, as a US citizen, has a right to return home to the United States. And the current ban on her boarding any commercial flight to, from or over the US territory effectively deprived her of that opportunity to return home. She. So just to be clear, you're just referring to the no fly that she cannot fly to the US, not that she cannot enter into the US. Correct. Yes. So in the Hague decision by the Supreme Court, right. I mean, says that this, you know, whatever right there might be to international travel can be outweighed by an interest in national security. But I would suggest that Hague says that that can be regulated within the bounds of due process. And we're saying that here petition was not afforded due process. Hague also dealt with the revocation of a former CIA agent's passport who had publicly exposed CIA employees and sources. And within that context, the court found the right to hold a passport was subordinate to national security. But the court specifically stated that the revocation of that passport without a pre suspension hearing was appropriate, where there was a substantial likelihood of serious damage to national security, not just the mere reasonable suspicion that there may be a threat. And what is the point at which the redress for this placement on the no fly list should occur? For example, if we if the agency has these concerns about her not being on that list, it almost sounds like you're suggesting that she'd be able to fly. And then this just kind of gets sorted out later. I mean, why wouldn't she at least be on some type of pending list? Not a bit, not able to fly. And then it gets adjudicated. If your concern is about her reputation or harm. Your Honor, I think that there is alternate lists. There's the selectee list, which would allow her to fly. But our suggestion is that these governments, the government's interests can be accomplished using those restrictive means. Indeed, it has been in the intervening years when she was paroled in 1989 up until she was denied boarding in 2009. Petitioner flew freely and the government had alternative procedures, extensive screening, which petitioner went through arriving at the airport earlier. And we would suggest that if she was placed on an alternate list like a selectee list, she would be able to still travel, but subject to reasonable restrictions. You also indicated that you didn't have the sufficient record, but in this case, that there was only certain portions that were redacted. So why do you need the unredacted administrative record? TSA has indicated that its decision is based on a prior criminal conviction, but predominantly on a prior criminal conviction. We don't know if there's any additional reasons or evidence in the record to suggest why a petitioner should be on that list. And that goes to the very issue of the process that petitioner was afforded in this situation. She cannot meet the. She cannot provide evidence for the accusations against her because she doesn't necessarily know what those accusations or evidence are. We would also suggest that TSA's order is arbitrary and preposterous because the record is void of any evidence other than that prior criminal conviction. And the simple fact of committing a particular crime in the past cannot constitute probable cause that the person has committed a crime in the future. Substantial evidence in the record actually shows the petitioner did not pose a threat. She was released on parole by the parole commission, who must have determined that she would not have jeopardized public welfare. And Judge Bartels, who tried petitioner's piracy conviction, specifically noted there was no question in his mind that she was not a terrorist in any sense of the word. But rather than meeting its burden to show petitioner currently presents a threat, TSA concluded that the evidence she presented does not support her. TSA's recitation of the historical facts and evidence presented by petitioner is so conclusive that it does not constitute any real consideration or analysis. And this court has held that a failure to respond meaningfully to the evidence and conclusive remarks renders the decision arbitrary and preposterous. You're into your rebuttal time, Ms. Goody, so thank you very much. Thank you. Mr. Baldwin, good morning. Good morning, your honors. My name is Joshua Baldwin from the Department of Justice, representing the Respondent Transportation Security Administration. After hijacking an airplane, petitioner was convicted of aircraft piracy and aircraft piracy resulting in the death of another person. Petitioner does not dispute that. She did not dispute any of the relevant facts in the administrative proceedings below. Her conviction alone for a crime with a direct connection to aviation security is reasonable grounds for her inclusion on the no-fly list. That is particularly so given the deference due under the arbitrary and capricious standard, and all the more so given the deference due to the executive branch in making predictive judgments of harm in this national security context. And this court in Olivares affirmed the TSA's use of prior criminal conviction, or even the suspicion of criminal activity, even for events that occurred decades ago in making that kind of security assessment or evaluation of aviation security. And that ought to answer entirely the petitioner's arbitrary and capricious stand. Mr. Baldwin, can I ask you, so I take your point, of course, the government has a very strong interest in aviation security, national security. Why does it take five years to simply notify a person that they are on the no-fly list? I mean, the cases that the government cites to support this lengthy delay are all about it taking five years to render a final decision. I mean, notice is sort of the first part of due process. I mean, why does it take five years, and why is that type of delay reasonable in the government's view? Let me answer that in two parts, one as a matter of law, and then one as a matter of fact. As a matter of law, this court in Gill said, delay of any kind, including a five-year delay, which was an issue in Gill, does not violate the due process clause unless the petitioner can show some harm, the outcome of the proceedings caused by the delay. And there's no allegation of that in this case. But speaking directly to the fact of this case, I will say the petitioner applied in 2015, which was very shortly after the government revised its redress proceedings for the first time. And she was among the first to ask for the benefit of the new redress process. And the government was still in the process, although it had notified the district court in the Lateef case that it was doing the process. It still needed to work through all of the details for the first time, in particular for the 14 plaintiffs in the Lateef case who were the first beneficiaries of the new proceeding. So there was a lot of government just getting up to speed and figuring out how they were going to do, for example, what they were going to say in an unclassified summary, how the whole procedure would work. So there were delays at that time. And she was not the first in line, but she was among the first. There were delays that don't necessarily happen right now because the government has a fully fleshed-out procedure. We'll also say in the middle of that, of those five years with the longest federal shutdown in history in 2018, tail end of her proceedings coincided with the COVID pandemic. So there were a number of reasons for these delays, but we don't expect that process is going to take that long in the future. So maybe there was some type of error, but you're suggesting it's harmless in her case. Well, I think my real deal is to say that there's no error at all. But I would agree that if there was, it would be harmless because there's no showing there was any possible outcome, harmful outcome to the outcome of the process by virtue of that delay. As there would be, for example, in a case where evidence was destroyed or lost because of the delay. This is essentially a case where the facts were entirely uncontested below. And so, no, I don't think that there's any due process violation caused by the delay. And as for the other due process arguments, all of them were essentially rejected correctly by the Ninth Circuit in the Casham case. And in that case, the Ninth Circuit actually pointed to this court's precedent in Giffrey, Holy Land Foundation and a whole number of other cases that say this court can properly examine as inherent authority. Ex parte record to test PSAs or the government's national security determinations, whether that information is classified or whether sensitive security information or law enforcement. I think that disposes mostly of petitioners due process. Casham also rejected the act on the reasonable suspicion standard, as well as the need for a live hearing, which was also rejected. I'd be happy to answer any other questions on the due process or on jurisdiction of this court. Any question? Judge Childs. Nothing further. Thank you. Thank you. Ms. Goody rebuttal. I would just like to address Gil. The TSA's reliance on this is misplaced because that arose under statutory scheme that didn't mandate timely agency action like TSA's mandate now. And I would suggest petitioner has suffered harm as a result of this delay. She's been prevented from traveling home by any reasonable means since 2009. During that time, her parents have passed away. She's been unable to attend important social and civil gatherings, and she's been deprived of her liberty interests and travel for that entire period of time. So there has been harm suffered by petitioner. As for Olivarez, this case is distinguishable as well, because TSA reached a conclusion based on an informed judgment that, again, included a comprehensive review of the threat that petitioner posed. Background investigations, internal agency communications, and explanations of the grounds that supported TSA's determination. Your Honor, if there's no further questions. Judge Childs. Nothing further. Thank you. Okay. Thank you, Ms. Goody. The case is submitted.
judges: Katsas, Rao, Childs